FILED

2008 Jun-11  PM 01:55
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## NORTHWESTERN DIVISION

| | | |
|---|---|---|
| **BERRY D. COLEMAN,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 3:08-cv-00003-CLS** |
| | ) | |
| **DARDEN RESTAURANTS, INC.,** | ) | |
| ***et al.,*** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff filed this lawsuit on January 2, 2008, against his former employers, Darden Restaurants, Inc. d/b/a Olive Garden Italian Restaurant ("Darden") and GMRI, Inc. d/b/a Olive Garden Italian Restaurant ("GMRI").[1]  Plaintiff asserts that defendants "subjected [him] to unlawful harassment, unfair discipline, suspension, termination, and other different terms and conditions, including subjecting [him] to daily racial taunts, refusing to acknowledge [him], refusing to address the racially hostile environment to which [he] was subjected, unfairly disciplining him, giving [him] unfair employment options, suspending him and terminating him" on the basis of his race, African American, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.* ("Title VII") and Section 102 of the

---

[1]*See* doc. no. 1 (complaint).  The evidence of record indicates that Darden is the parent company of GMRI.  *See* doc. no. 10-2 (affidavit of Jeremy Williams) at ¶ 2.

Civil Rights Act of 1991, 42 U.S.C. § 1981a.[2]  Further, plaintiff asserts a Title VII retaliation claim as well as state law claims for slander, invasion of privacy, and negligent or wanton hiring, training, supervision and retention.[3]

This matter comes before the court on defendants' motion to dismiss or, alternatively, to stay and compel arbitration.[4]  Plaintiff opposes the motion.[5]  Because defendants' motion to compel arbitration is due to be granted, the court will not consider the motion to dismiss.

The Federal Arbitration Act ("FAA") establishes a federal policy favoring arbitration.  *See, e.g., Shearson/American Express, Inc. v. McMahon*, 482 U.S. 220 (1987).  Under the FAA, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration."  *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 24-25 (1983).

The existence of a valid contract to arbitrate is determined by state law.  *See First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995).  Under Alabama law, there are two prerequisites for a valid arbitration contract:  "(1) there must be a written agreement calling for arbitration[;] and (2) the contract in which the arbitration agreement appears must relate to a transaction involving interstate

---

[2]*Id.* at ¶ 12.

[3]*Id.* at 8-13.

[4]*See* doc. no. 9 (motion to dismiss or, alternatively, to stay and compel arbitration).

[5]*See* doc. no. 13 (plaintiff's opposition to motion to dismiss).

commerce." *Prudential Securities v. Micro-Fab, Inc.*, 689 So. 2d 829, 832 (Ala. 1997) (citation omitted).

Both of the above requirements are satisfied in the present case.  First, written arbitration agreements between plaintiff and each defendant clearly exist.  It is undisputed that plaintiff was employed as the manager of an Olive Garden Italian Restaurant located in Florence, Alabama, and that both defendants "do business as" Olive Garden Italian Restaurant.  Plaintiff's application for employment, which he signed on December 8, 2005, provides

> I understand that GMRI, Inc. d/b/a The Olive Garden (Red Lobster) has in place a dispute resolution procedure, and I further acknowledge and agree that if I am offered and accept employment, any dispute between me and GMRI, Inc. d/b/a The Olive Garden (Red Lobster) relating to my employment and/or my separation from employment, shall be submitted within 1 (one) year of the day which I learned of the event and shall be resolved pursuant to the terms and conditions of the dispute resolution procedure.[6]

GMRI's dispute resolution procedure mandates that controversies between it and its employees be resolved through arbitration.[7]

Plaintiff was hired by defendants on January 3, 2006, at which time he received a copy of the "Olive Garden" employee handbook, which contains defendant Darden's dispute resolution procedure.[8]  Upon receipt of the handbook, plaintiff

---

[6]Doc. no. 10-2 (plaintiff's application for employment).

[7]*See* doc. no. 10-2 (affidavit of Jeremy Williams).

[8]*Id.* at ¶ 9.

3

signed an acknowledgment that he agreed "to follow and be bound by the Darden Dispute Resolution Procedure, as outlined in the Darden Dispute Resolution handbook."[9]   The handbook provides that "the Employee or the Company may submit" an otherwise unresolved dispute "to final and binding arbitration."[10]

Further, the agreements between plaintiff and each defendant involve interstate commerce.   This requirement is satisfied if the transactions among the parties remotely involve interstate commerce.   *See Allied-Bruce Terminex Companies, Inc. v. Dobson*, 513 U.S. 265, 273 (1995) (the words "interstate commerce . . . are broader than the often-found words of art 'in commerce.'   They therefore cover more than 'only persons or activities *within the flow* of interstate commerce.'") (quoting *United States v. American Building Maintenance Industries*, 422 U.S. 271, 276 (1975)) (emphasis in original).   *See also Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1370 (11th Cir. 2005) (holding that the interstate commerce requirement is satisfied by "overall employment practices affect[ing] commerce," and noting that the FAA is applicable to all contracts of employment that do not involve transportation workers).   Defendants argue that

> All Olive Garden restaurants, including the one in Florence, Alabama, are significantly involved in activities of interstate commerce.   On a daily basis, by way of example and without limitation, managers of the

---

[9]*Id.*

[10]Doc. no. 10-2 ("Darden Restaurants' Dispute Resolution" plan).

Florence restaurant (such as Plaintiff) use U.S. Mail, electronic mail and interstate telephone lines to receive and transmit information and communicate with the Restaurant Support Center in Orlando, Florida. Employee paychecks, drawn on SunTrust Bank, are delivered to the restaurant on a weekly basis via interstate express courier service. On a regular basis, each restaurant receives shipments of food and restaurant supply products from the Restaurant Support Center and from various states throughout the country.[11]

Plaintiff does not respond to defendants' insistence that any agreements among the parties involve interstate commerce; therefore, he has waived any opposition to defendants' position. *See Flanigan's Enterprises*, *Inc. v. Fulton County*, 242 F.3d 976, 987 n.16 (11th Cir. 2001) (holding that "fail[ure] to elaborate or provide any citation of authority in support" of or opposition to an argument results in waiver). Nonetheless, the court finds that defendants have demonstrated that the interstate commerce requirement is satisfied.

Rather than responding directly to defendants arguments in favor of compelling arbitration, plaintiff advances two separate arguments in opposition to the instant motion. First, plaintiff states that he "does not know who or what GMRI is," and cites to his affidavit as evidence.[12] The exact purpose of this argument eludes the court, and plaintiff does not explain its legal significance. The implicit crux of plaintiff's position seems to be that if he has no knowledge of GMRI, or if GMRI was not his employer, then he could not have entered into a contract with that entity.

---

[11]Doc. no . 10 (brief in support of motion to dismiss) at 12.

[12]Doc. no. 13 (plaintiff's opposition to motion to dismiss) at 1.

Plaintiff does not cite any legal authority in support of this position, and this court will not give consideration to arguments that are not fully developed or bolstered with legal authority.  *See U.S. Steel Corp. v. Astrue*, 495 F.3d 1272, 1287 n.13 (11th Cir. 2007) (refusing to address a party's "perfunctory and underdeveloped argument").

Moreover, plaintiff's assertion that he has no knowledge of GMRI is wholly inconsistent with his prior filings with this court.  In his complaint, a pleading that appears to bear plaintiff's signature, GMRI is named as a defendant, is identified as plaintiff's employer, and is described as "a Florida corporation, which is doing business as Olive Garden Italian Restaurant in Florence, Lauderdale County, Alabama . . . ."[13]  In contrast, plaintiff's affidavit, which was submitted as evidence in opposition to the present motion, provides that "[d]irectly contrary to the claims of Defendants . . . I was employed by Darden and not by GMRI."[14]  Despite this patent inconsistency, and because plaintiff has not developed any legal arguments that are reliant on this question of fact, the court need not give this point any further consideration.

Plaintiff also argues that the contract he executed with defendant Darden is void as a matter of Alabama law, and that, as such, "it would be reversible error for

---

[13]Doc. no. 1 (complaint) at 1-5.

[14]Doc. no. 13-2 (plaintiff's affidavit) at ¶ 3.

this Court to order [him] to arbitrate his claims against Darden."[15]  Under Alabama

law

> All contracts or agreements made or entered into in this state by foreign
> corporations prior to obtaining a certificate of authority to transact
> business in this state shall be held void at the action of the foreign
> corporation or by any person claiming through or under the foreign
> corporation by virtue of the contract or agreement; but nothing in this
> section shall abrogate the equitable rule that he who seeks equity must
> do equity.

Ala. Code § 10-2B-15.02(a) (1975) (1999 Replacement Vol.).  The Alabama Supreme

Court has held that a "foreign corporation [may] not compel arbitration pursuant to

an arbitration clause in a contract [if] the entire contract [is] unenforceable and

invalid as a result of the foreign corporation's failure to qualify to do business in

Alabama."  *Brown v. Pool Depot, Inc.*, 853 So.2d 181, 185 (Ala. 2002) (quoting

*Alabama Catalog Sales v. Harris*, 794 So.2d 312, 315 (Ala. 2000) (brackets in

original).  Defendants do not dispute that Darden is a Florida corporation that is not

licensed to conduct business in Alabama.

Contrary to plaintiff's argument, however, it is not within this court's purview

to determine whether Alabama law renders the arbitration agreement between

plaintiff and Darden invalid.  Plaintiff, importantly, does not argue that he did not

enter into a contract with Darden, or that there is not an arbitration clause within that

contract.  Rather, plaintiff argues that any contract between him and Darden is void

---

[15]Doc. no. 13 (plaintiff's opposition to motion to dismiss) at 10.

as a matter of law.  As the Alabama Supreme Court recently noted, when discussing

United States Supreme Court precedent,

> It is well established that challenges to the validity of the contract *as a whole* and not specifically to the arbitration clause within the contract must *go to the arbitrator*, *not a court*.  In *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 126 S.Ct. 1204, 163 L.Ed.2d 1038 (2006), the United States Supreme Court held:
>
> > "*Prima Paint* [*Corp. v. Flood & Conklin Manufacturing*] *Co.*, 388 U.S. 395, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967),] and *Southland* [*Corp. v. Keating*, 465 U.S. 1, 104 S.Ct. 852, 79 L.Ed.2d 1 (1984),] answer the question presented here by establishing three propositions. First, as a matter of substantive federal arbitration law, an arbitration provision is severable from the remainder of the contract. Second, *unless the challenge is to the arbitration clause itself, the issue of the contract's validity is considered by the arbitrator in the first instance*.  Third, this arbitration law applies in state as well as federal courts.  The parties have not requested, and we do not undertake, reconsideration of those holdings. Applying them to this case, we conclude that because respondents challenge the Agreement, but not specifically its arbitration provisions, those provisions are enforceable apart from the remainder of the contract. The challenge should therefore be considered by an arbitrator, not a court."

*Paragon Ltd., Inc. v. Boles*, 2007 WL 4464880, *5 (Ala. December 21, 2007)

(emphasis supplied).  Accordingly, while plaintiff's argument regarding the validity

of his agreement with Darden may, or may not, have merit, that issue is a matter for

the arbitrator "in the first instance."

For  the  reasons  stated  herein,  defendants'  alternative  motion  to  compel

arbitration is GRANTED.[16]  Further, the court is of the opinion that plaintiff's claims should be stayed pending arbitration.  Though there is case law in other circuits supporting the proposition that, under section 3 of the Federal Arbitration Act, 9 U.S.C. § 3,[17] courts have the discretionary authority to dismiss cases when compelling arbitration, the Eleventh Circuit adheres to a more literal interpretation of the statute. In *Bender v. A.G. Edwards & Sons, Inc.*, 971 F.2d 698 (11th Cir. 1992), the Eleventh Circuit concluded that district courts do not have the power to choose dismissal over a stay:

> The district court properly found that the state law claims were subject to arbitration, but erred in dismissing the claims rather than staying them.  Upon finding that a claim is subject to an arbitration agreement, the court should order that the action be stayed pending arbitration.  9 U.S.C. § 3.  If the parties do not proceed to arbitration, the court may compel arbitration.  9 U.S.C. § 4.  Therefore, we vacate the dismissal of the state law claims and remand with instructions that judgment be entered staying all claims pending arbitration.

---

[16]Plaintiff filed a motion for leave to immediately take two depositions related to this matter. *See* doc. no. 16.  The court will not delve into the merits of plaintiff's motion.  Because this controversy is properly before an arbitrator, plaintiff's motion is DENIED without prejudice to plaintiff's right to re-file after arbitration proceedings are commenced so that an arbitrator can render a decision on such a motion.

[17] 9 U.S.C. § 3 reads as follows:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, *shall on application of one of the parties stay the trial of the action until such arbitration has been held in accordance with the terms of the agreement*, providing the applicant for the stay is not in default in proceeding with such arbitration. [Emphasis supplied.]

*Id.* at 699.

In *Lloyd v. Hovensa, LLC*, 369 F.3d 263 (3rd Cir. 2004), the Third Circuit expressed a similar stance on the issue, basing its reasoning primarily on the clear statutory language, but also providing some practical justifications for entering a stay rather than an order of dismissal. *Id.* at 268-271. The court noted that a stay "relieves the party entitled to arbitrate of the burden of continuing to litigate the issue while the arbitration process is on-going, and it entitles that party to proceed immediately to arbitration without the delay that would be occasioned by an appeal of the District Court's order to arbitrate."[18] *Id.* at 269. For the same reasons, this court finds that a stay of the proceedings, rather than dismissal, is appropriate here.

Nevertheless, the file may be closed for administrative and statistical purposes. *See Pitchford v. AmSouth Bank,* 285 F. Supp. 2d 1286, 1297 (M.D. Ala. 2003) (closing file administratively after entering stay but advising parties of their right to request reinstatement); *Nazon v. Shearson Lehman Brothers, Inc.*, 832 F. Supp. 1540, 1543 (S.D. Fla. 1993) (same). Such action will have no affect on the court's retention of jurisdiction, and the file may be re-opened on either party's motion. *See Pitchford,* 285 F. Supp. 2d at 1297.

---

[18]The court in *Bender* also recognized the fact that stays, unlike dismissals, are not final decisions and are thus not appealable. The court stated, "[i]f the district court had stayed the state law claims and compelled arbitration under 9 U.S.C. §§ 3-4, this order would not have been appealable under 9 U.S.C. §§ 16(b)(1) and (2)." 971 F.2d at 699.

Accordingly, it is further ordered that this action is hereby STAYED, and the clerk is directed to close this file for administrative and statistical purposes.

The parties are ORDERED to take any and all actions necessary to commence arbitration proceedings regarding this dispute.  Further, the parties are directed to file a status report, either jointly or separately, 90 days from the date of this order, and every 90 days thereafter, apprising the court of the progress of this controversy.  The parties shall immediately notify this court upon a resolution of plaintiff's claims.

DONE this 11th day of June, 2008.

_____
United States District Judge